SIMON, Justice.
This cause arises out of the respective applications of Mrs. Evelyn Goldberg, the maternal grandmother, Mrs. Fannie Sterbcow Schwartz, a paternal aunt, and Sol J. Sterbcow, a paternal uncle, each seeking to be appointed tutor of the minors, Arthur Sterbcow, age 4, and Ann Sterbcow, age 3, children of Dr. Marx David Sterbcow and Marcia Eidelman Sterbcow, now deceased. At the inception of the trial in the district court, Mrs. Evelyn Goldberg withdrew her application, leaving for determination the respective qualifications of Mrs. Fannie Sterbcow Schwartz and Sol J. Sterbcow. .
After a lengthy and tedious hearing, the trial judge, considering primarily the future *527 welfare of the minors, rendered judgment appointing Mrs. Fannie Sterbcow Schwartz as their tutrix. From this judgment Sol J. Sterbcow has appealed.
Appellant contends that Mr. and Mrs. Schwartz are lacking in the attributes of education, neither having acquired more than the advantages offered by grade schools, and that consequently their limited education has deprived them of life’s cultural .refinement; whereas, on the other hand, he and his wife possess a higher degree of education, she being a registered nurse and he being a college graduate. Appellant further contends that appellee and her husband, because of their lack of fortune, lived simply and frugally in a semicommercial neighborhood, and were therefore deprived of social development and sophistication sufficient to properly guide the emotional and material welfare of. the children; whereas, on the other hand, “Dame Fortune” has been kind to him, affording him the benefits of a high income with the enjoyment of luxuries and enabling him to own and maintain a spacious home with all modern comforts .and conveniences in an exclusive residential section of this city, in which they could rear the children in a manner befitting .their station in life.
The record discloses that on December 22, 1953, Dr. and Mrs. Sterbcow met tragic dual-deaths. On that day they were estranged and had been living separate and apart, the children residing with Mrs. Sterbcow in her own apartment, subject to the right of visitation by their father. Immediately following the tragedies the children were taken from their home and placed in the temporary custody and care of the juvenile authorities and on the same day released to the care, custody and control of Mrs. Fannie Sterbcow Schwartz.
The record abounds with proof that Mrs. Schwartz is deeply attached to .and has consistently shown a devotion akin to maternal love for these children as though they were her own, and that this affection is reciprocated. Significantly, the record is barren of any proof or suspicion which could arouse the slightest intimation to question or impeach the consistent representation that Mrs. Fannie Sterbcow Schwartz possesses an uncompromising and exemplary code of moral righteousness. It is also significant that the maternal grandmother, with natural love and concern for the well-being of her grandchildren and having made full inquiry into all of the circumstances affecting the future welfare and security of the children, particularly including the reputation and character of the applicants involved, judicially expressed her desire and recommendation that the children be allowed to remain in the care, custody and control of appellee and her husband.
The contention of appellant that the limited educational background of appellee and her husband, having deprived *529 them of the culture and refinement which may be enjoyed by persons of higher education, renders them unfit, or less fit than appellant and his wife, to serve as tutors to these children is not worthy of consideration. To penalize persons be'cause of educational limitations, irrespective of inherent intelligence, is not only unthinkable but is ■ repugnant to our civil as well as our moral laws. Though we realize that educational advantages may in certain instances be considered in determining qualifications of applicants, one instance is not decisive of another. The standard that appellant seeks to have us adopt for determining the qualifications of persons to be appointed as tutors of children would be tantamount to placing an unforgivable penalty upon those who were deprived through poverty or inopportunity of cultural benefits and to denying children the invaluable privilege of being reared by those who have selflessly professed .and shown a great measure of interest and devotion in their welfare, which is our uppermost concern.
The further contention of appellant that the limited finances of appellee and her husband have curtailed their social development and sophistication, thereby reflecting against their qualifications to serve as tutors to these children, is untenable and equally deserving of no consideration. It is well known that a greater measure of love and devotion and development of emotional stability from which springs the happiness of people may more often, be found under the roof of the humblest cottage than may be- found in palatial mansions.
Appellant’s further contention that the ages of appellee and her husband should be considered as a serious- deterrent to appellee’s appointment as tutor herein is equally devoid of merit. We can conceive of instances where the advanced age of a person, with the infirmities not uncommon to the late twilight of life, may serve as a deterrent to his appointment to a position of responsibility such as that of tutorship to minors of tender years. However, in this case we are not presented with this factor; appellee is only 47 years old and is not burdened with physical or mental infirmities that would prevent or impair the fulfillment of the duties incumbent upon tutors. Age alone cannot be considered a controlling criterion. Under our codal law[1] grandmothers of minors have the right to claim tutorship. ,• .
Neither is there any merit to appellant’s contention that women other than mothers and grandmothers cannot be tutors. The disqualifications for tutorship imposecl on women by the Civil Code[2] have been superseded by Act 34 of 1921, LSA-R.S. 9:51, which reads as follows:
“Women have the same rights, authority, privileges, and immunities, and *531 shall perform the same obligations and duties as men in the holding of office including the civil functions of tutor, undertutor, * * (Italics ours.)
In the case of In re Rhymes’ Tutorship, 153 La. 639, 96 So. 501, in construing the above-quoted statute, we said:
“ * * * But the statute provides that, in the matter of tutorships, women shall have the same rights, privileges, and immunities as men; * * (Italics ours.)
We consider most significant the fact that in the last will find testament of Dr. Marx Sterbcow, dated February 14, 1952, he declared that “ * * * Revenue to be used for their maintenance & education — funds managed by Mrs. Fannie Schwartz. * *
This proviso expressed the testator’s desire that appellee would disburse and use the funds allotted to her by the children’s trustees, Hibernia National Bank and Attorney Meyer Sabludowsky for the care, maintenance, education and future security of the children. Though appellee is not expressly named therein as tutor or guardian, we can infer that the actual disbursement of these funds for the benefit of the children was a responsibility placed upon her by the testator. We may also infer that the testator unquestionably recognized his oldest sister, Fannie Sterbcow Schwartz, as the one most fitted to carry out his desires in regard to the personal welfare of his children.
The complaint of appellant that the under-tutor has been appointed by the tutor in violation of law is unsupported by the record. On the contrary, it is shown that the trial judge himself appointed the under-tutor to these children, clearly his province under our codal law.[3]
We are not Impressed with other general complaints questioning the capability of appellee to administer the estates of these children. However, it is worthy to observe that their deceased father by testament provided adequate security in the judicious expenditure of the funds representing the estate of the children by the appointment of the two above-named cotrustees to administer their financial estate, thereby dispensing with the necessity of determining appellee’s qualifications in this respect.
Under the facts presented during this lengthy hearing, the trial judge concluded that the welfare of the minors would best be served by the appointment of Fannie Sterbcow Schwartz as tutrix, and finding no clear or manifest error we will not disturb the judgment rendered by him. The authorities for this position are legion, and citation thereof would be burdensome. In the case of Pulling v. Theriot, 209 La. 871, 25 So.2d 620, 622, we said:
*533 “ ‘It is also well settled that a reasonable latitude must be left to the trial judge in determining matters affecting the welfare of children and his judgment, based upon the facts disclosed in any given case, is entitled to great weight. State [ex rel. Landry] v. Robin, 193 La. 789, 192 So. 349.’ State ex rel. Johnson v. Ashmore, 197 La. 971, 2 So.2d 897, 898.”
For the reasons assigned, the judgment of the district court is affirmed. All costs to be paid by the appellant.

. USA-Civil Code, Article 266.

. Article 302.

. LSA-Civil Code, Article 273.